## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

MELISSA JEAN LAWRENCE,

      Plaintiff,

      v.

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

CIVIL ACTION NO. 3:21-cv-01239

(SAPORITO, M.J.)

## **MEMORANDUM**

In this matter, the plaintiff, Melissa Jean Lawrence, seeks judicial review of the final decision of the Commissioner of Social Security denying her claim for disability insurance benefits, pursuant to 42 U.S.C. § 405(g). The matter has been referred to the undersigned United States magistrate judge on consent of the parties, pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.

## I. BACKGROUND

On March 27, 2019, Lawrence protectively filed a claim for disability insurance benefits, asserting a disability onset date of November 6, 2018. Her claim was initially denied by state agency reviewers on July 24, 2019, and upon reconsideration on May 7, 2020.

The plaintiff then requested an administrative hearing.

A telephone hearing was subsequently held on August 24, 2020, before an administrative law judge, Theodore Burock (the "ALJ"). In addition to the plaintiff herself, the ALJ received testimony from an impartial vocational expert, Sheryl Bustin. The plaintiff was represented by counsel at the hearing.

On November 3, 2020, the ALJ denied Lawrence's application for benefits in a written decision. The ALJ followed the familiar five-step sequential evaluation process in determining that Lawrence was not disabled under the Social Security Act. *See generally Myers v. Berryhill*, 373 F. Supp. 3d 528, 534 (M.D. Pa. 2019) (describing the five-step sequential evaluation process). At step one, the ALJ found that Lawrence had not engaged in substantial gainful activity since her alleged disability onset date. At step two, the ALJ found that Lawrence had the severe impairments of: depression, anxiety, asthma/COPD, obesity, and headaches with neck pain.

At step three, the ALJ found that Lawrence did not have an impairment or combination of impairments that meets or medically equals the severity of an impairment listed in 20 C.F.R. Part 404,

Subpart P, Appendix 1. In doing so, the ALJ considered Lawrence's limitations in four broad functional areas as a result of her mental disorders, finding mild limitations in one functional area—(1) understanding, remembering, or applying information—and moderate limitations in the other three—(2) interacting with others, (3) concentrating, persisting, or maintaining pace, and (4) adapting or managing oneself. *See generally* 20 C.F.R. § 404.1520a(c) (explaining functional limitation rating process for mental impairments); 20 C.F.R. pt. 404, subpt. P, app.1, § 12.00(E) (explaining the four areas of mental functioning); *id.* § 12.00(F) (explaining process for using paragraph B criteria to evaluate mental impairments). In connection with listings 12.04 and 12.06, the ALJ also considered whether Lawrence's mental disorders were "serious and persistent," finding that her impairments had not required medical treatment, mental health therapy, psychosocial support, or a highly structured setting that is ongoing and that diminished the symptoms and signs of her mental disorders, nor that she had achieved only marginal adjustment as a result. *See generally id.* § 12.00(G) (explaining process for using alternative paragraph C criteria to evaluate certain mental impairments).

Between steps three and four of the sequential-evaluation process, the ALJ assessed Lawrence's residual functional capacity ("RFC"). *See generally Myers*, 373 F. Supp. 3d at 534 n.4 (defining RFC). After evaluating the relevant evidence of record, the ALJ found that Lawrence had the RFC to perform the full range of "light work" as defined in 20 C.F.R. § 404.1567(b),[1] with the following limitations:

> [s]he is limited to simple routine repetitive tasks with a GED of 1,1,1[2] involving very short and simple

_____

[1] The Social Security regulations define "light work" as a job that "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b).

[2] In determining whether a claimant is capable of performing work that exists in significant numbers in the national economy, the agency and the courts routinely rely on the *Dictionary of Occupational Titles* (4th ed. 1991) ("*DOT*"), a publication by the U.S. Department of Labor that identifies thousands of jobs by name and describes the skills and other attributes required to perform each. *See* 20 C.F.R. § 404.1566(d)(1) ("[W]e will take administrative notice of reliable job information from various governmental and other publications. For example, we will take notice of . . . [the] Dictionary of Occupational Titles, published by the Department of Labor . . . ."); *see also Evans v. Metro. Life Ins. Co.*, 190 Fed. App'x 429, 436 n.7 (6th Cir. 2006) (recognizing that courts may take judicial notice of the *DOT* as well). The *DOT* includes a description of the "general educational development" ("GED") for each of the jobs catalogued therein. "General Educational Development embraces those aspects of education (formal and informal) which are required of the worker for satisfactory job performance." *DOT* app. C, 1991 WL 688702. "The GED Scale is composed of three divisions: Reasoning Development, Mathematical
*(continued on next page)*

instructions in a stable environment, occasional interaction with coworkers and supervisors, no public interaction, no more than occasional changes in work settings, production oriented jobs requiring little independent decision making, and no concentrated exposure to extreme cold, heat, humidity, dust, fumes, odors, gases, or poor ventilation.

(Tr. 16.)

In making these factual findings regarding Lawrence's RFC, the ALJ considered her symptoms and the extent to which they could reasonably be accepted as consistent with the objective medical evidence and other evidence of record. *See generally* 20 C.F.R. § 404.1529; Soc. Sec. Ruling 16-3p, 2017 WL 5180304 (revised Oct. 25, 2017). The ALJ also considered and articulated how persuasive he found the medical opinions and prior administrative medical findings of record. *See generally* 20 C.F.R. § 404.1520c.

At step four, based on this RFC and on testimony by the vocational expert, the ALJ concluded that Lawrence was unable to perform her

---

Development, and Language Development." *Id.* Each division is rated on a scale from level 1 to level 6. *See id.* Here, the ALJ's reference to "GED of 1,1,1" plainly signifies a finding that the claimant was limited to jobs requiring a maximum of level 1 reasoning, mathematical, or language development. Each of the three representative occupations identified by the vocational expert, and adopted by the ALJ at step five, has a GED rating of 1/1/1.

past relevant work as a receiving checker clerk, small products assembler, or cake decorator/icer, as actually or generally performed.

At step five, the ALJ concluded that Lawrence was capable of performing other jobs that exist in significant numbers in the national economy. Based on her age, education, work experience, and RFC, the ALJ concluded that Lawrence was capable of performing the requirements of cleaner/housekeeper (DOT #323.687-014), potato chip sorter (DOT #526.687-010), or bakery worker, conveyor line (DOT #524.687-022). Based on this finding, the ALJ concluded that Lawrence was not disabled for Social Security purposes.

The plaintiff sought further administrative review of her claims by the Appeals Council, but her request was denied on May 24, 2021, making the ALJ's November 2020 decision the final decision of the Commissioner subject to judicial review by this court.

The plaintiff timely filed her complaint in this court on July 14, 2021. The Commissioner has filed an answer to the complaint, together with a certified copy of the administrative record. Both parties have filed their briefs, and this matter is now ripe for decision.

## II.   DISCUSSION

Under the Social Security Act, the question before this court is not whether the claimant is disabled, but whether the Commissioner's finding that he or she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See generally* 42 U.S.C. § 405(g)(sentence five); *Myers*, 373 F. Supp. 3d at 533 (describing standard of judicial review for social security disability insurance benefits and supplemental security income administrative decisions).

The plaintiff contends that the ALJ's decision is not supported by substantial evidence because the ALJ erred in his evaluation of conflicting medical opinions and prior administrative findings with respect to the plaintiff's mental health impairments.[3] As a preface, we note the well-established principle that, in evaluating the medical opinion evidence of record, an "ALJ is not only entitled, but required to choose between" conflicting medical opinions. *Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981). "[T]he possibility of drawing two inconsistent

---

[3] The plaintiff does not challenge the ALJ's findings with respect to her physical RFC or the ALJ's consideration of medical opinions or prior administrative findings concerning her physical impairments.

conclusions from the evidence does not prevent [an ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). Moreover, "[i]n the process of reviewing the record for substantial evidence, we may not 'weigh the evidence or substitute [our own] conclusions for those of the fact-finder.'" *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)). Ultimately, to reverse the ALJ's findings and decision, "we must find that the evidence not only *supports* [a contrary] conclusion, but *compels* it." *Immigration & Naturalization Serv. v. Elias-Zacarias*, 502 U.S. 478, 481 n.1 (1992); *see also Smith v. Chater*, 99 F.3d 780, 782 & N.3 (6th Cir. 1996) (citing *Elias-Zacarias* in the context of social security disability benefits); *Hert v. Barnhart*, 234 F. Supp. 2d 832, 837 (N.D. Ill. 2002) ("The court may reverse the Commissioner's decision only if the evidence 'compels' reversal, not merely because the evidence supports a contrary decision.") (citing *Elias-Zacarias*).

Here, the plaintiff originally filed her administrative claim for benefits in March 2019.  Thus, a relatively new regulatory framework governing the evaluation of medical opinion evidence applies to this

case. "The new regulations have been described as a 'paradigm shift' in the way medical opinions are evaluated." *Knittle v. Kijakazi*, Civil No. 1:20-CV-00945, 2021 WL 5918706, at *4 (M.D. Pa. Dec. 15, 2021). "Prior to March 2017, ALJs were required to follow regulations which defined medical opinions narrowly and created a hierarchy of medical source opinions with treating sources at the apex of this hierarchy." *Densberger v. Saul*, Civil No. 1:20-CV-772, 2021 WL 1172982, at *7 (M.D. Pa. Mar. 29, 2021). Under this prior regulatory scheme, the Social Security Administration "followed the 'treating physician rule,' which required the agency to give controlling weight to a treating source's opinion, so long as it was 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and not 'inconsistent with the other substantial evidence' in the record." *Michelle K. v. Comm'r of Soc. Sec.*, 527 F. Supp. 3d 476, 481 (W.D. Pa. 2021). However, the regulations governing the evaluation of medical evidence were amended and the treating physician rule was eliminated effective March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5,844 (Jan. 18, 2017); *see also Densberger*, 202 WL 1172982, at *7–*8; *Michelle K.*, 527 F. Supp. 3d at 481. "The range of opinions

that ALJs were enjoined to consider were broadened substantially and the approach to evaluating opinions was changed from a hierarchical form of review to a more holistic analysis." *Densberger*, 2021 WL 1172982, at *7.

Under these new regulations, the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a). "Rather than assigning weight to medical opinions, [an ALJ] will articulate 'how persuasive' he or she finds the medical opinions." *Knittle*, 2021 WL 5918706, at *4; *see also* 20 C.F.R. § 404.1520c(b). If a medical source provides one or more medical opinions, the agency will consider those medical opinions from that medical source together using the following factors: "(1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treatment relationship, the frequency of examinations, purpose and extent of the treatment relationship, and the examining relationship; (4) specialization; and (5) any other factors that 'tend to support or contradict a medical opinion or prior administrative medical finding.'"

*Michelle K.*, 527 F. Supp. 3d at 481; *see also* 20 C.F.R. § 404.1520c(a); *Densberger*, 2021 WL 1172982, at *8. Under the new regulations, "[t]he two 'most important factors for determining the persuasiveness of medical opinions are consistency and supportability,' which are the 'same factors' that formed the foundation of the treating source rule." *Densberger*, 2021 WL 1172982, at *8; *see also* 20 C.F.R. § 404.1520c(b)(2); *Michelle K.*, 527 F. Supp. 3d at 481; *compare* 20 C.F.R. § 404.1520c(c)(1) (supportability), and *id.* § 404.1520c(c)(2) (consistency), *with id.* § 404.1527(c)(3) (supportability), and *id.* § 404.1527(c)(4) (consistency).[4] An ALJ is specifically required to address these two factors in his or her decision. *See* 20 C.F.R. § 404.1520c(b)(2); *see also Densberger*, 2021 1172982, at *8; *Michelle K.*, 527 F. Supp. 3d at 482. "The ALJ may—but is not required to—explain

---

[4] With respect to supportability, the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). With respect to consistency, the new regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(2).

how he considered the remaining factors." *Michelle K.*, 527 F. Supp. 3d at 482; *see also* 20 C.F.R. § 404.1520c(b)(2); *Densberger*, 2021 WL 1172982, at *8. "However, when the ALJ has found two or more medical opinions to be equally well supported and consistent with the record, but not exactly the same, the ALJ must articulate how he or she considered [the remaining] factors . . . ." *Densberger*, 2021 WL 1172982, at *8; *see also* 20 C.F.R. § 404.1520c(b)(3); *Michelle K.*, 527 F. Supp. 3d at 482.

**A. Prior Administrative Findings**

The prior administrative findings included the opinions of state agency psychological consultants, Emanuel Schnepp, Ph.D., and John Gavazzi, Psy. D., both of whom found that, notwithstanding her medically determinable mental impairments, Lawrence had no more than mild or moderate limitations in any of the four areas of mental functioning. Dr. Schnepp found that Lawrence was moderately limited in her ability to understand and remember detailed instructions, to maintain attention and concentration for extended periods, to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, to complete a normal workday

and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, to accept instruction and respond appropriately to criticism from supervisors, to get along with coworkers or peers without distracting them or exhibiting behavioral extremes, to respond appropriately to changes in the work setting, and to travel in unfamiliar places or use public transportation. On reconsideration, Dr. Gavazzi found fewer limitations, finding that Lawrence was moderately limited in her ability to maintain attention and concentration for extended periods, to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, to interact appropriately with the general public, to accept instructions and respond appropriately to criticism from supervisors, and to respond appropriately to changes in the work setting.[5] (Tr. 73–77, 86–90.)

In evaluating the opinions of Dr. Schnepp and Dr. Gavazzi, the ALJ found that:

---

[5] Dr. Gavazzi found no significant limitations in any other areas.

The state agency mental health opinions [of Dr. Schnepp] are persuasive. In support of these opinions, the state agency consultant cited to the claimant's psychiatric records, including multiple normal findings during a mental status examination. He also cited to therapy records and the claimant's self-reports of crying spells and difficulties coping with stress. He noted that even with the symptoms, the claimant remained fairly independent with her self-care and activities of daily living. He advised although the claimant may have some difficulty understanding, retaining, and following complex detailed instructions, she remained capable of retaining and following simple task instructions such as one and two step tasks. He noted her basic memory processes were intact for recent and remote events, she had some limitations maintaining attention and concentration for extended periods as well as some limitations interacting with others and responding appropriately to work setting changes. His opinions are generally consistent with the opinions of the state agency consultant upon reconsideration [Dr. Gavazzi].

The state agency mental health opinions [of Dr. Gavazzi] are persuasive. In support of these opinions, the state agency consultant advised that the claimant has some struggles with social skills, she has not required inpatient care and care has generally consiste[d] of taking psychotropic medications and participating in psychotherapy. Moreover, his opinions are generally consistent with the state agency initial mental health opinions [of Dr. Schnepp] and with a number of the progress notes from the claimant's counselor and psychiatrist.

(Tr. 20 (citations omitted).)

The plaintiff has not challenged the ALJ's evaluation of these prior administrative findings.

## B. Opinion of Treating Mental Health Counselor

On June 5, 2020, Lawrence's treating mental health counselor, Ann Stipe, Ph.D., LCSW, RN,[6] completed a mental status evaluation

---

[6] In her briefs, the plaintiff has argued that the ALJ improperly discounted Dr. Stipe's medical opinion, noting that the ALJ referred to Dr. Stipe as "Ms. Stipe" and as a "social worker/counselor." The plaintiff suggests that Dr. Stipe should instead be referred to as "Dr. Stipe" because she has a doctorate degree, and the plaintiff suggests that Dr. Stipe's opinion was entitled to greater persuasive weight than that afforded by the ALJ because she is a licensed psychologist rather than merely a "social worker/counselor." In our review of the administrative record, however, we find no evidence to indicate that Dr. Stipe was a licensed psychologist. The forms completed by Dr. Stipe do not expressly state that she is a licensed psychologist, and while her signature indicates that she has been awarded a Ph.D.—which indeed merits use of the honorific "Dr." rather than "Ms."—it otherwise indicates only that Dr. Stipe was a licensed social worker and a registered nurse. Reference to the publicly available Pennsylvania Licensing System database, which is available at https://www.pals.pa.gov/#/page/search (last visited Nov. 18, 2022), discloses that Dr. Stipe has active state professional licenses as a clinical social worker and as a registered nurse. *See Anaya v. Berryhill*, Case No. 5:16-CV-01199-GJS, 2018 WL 565698, at *4 n.2 (C.D. Cal. Jan. 24, 2018) (taking judicial notice of information found in a publicly accessible state online database of professional licenses); *Dufresne v. Astrue*, No. 5:12-CV-00049 (MAD/TWD), 2013 WL 1296376, at *6 n.5 (N.D.N.Y. Mar. 8, 2013) (same). There is no record that she has been licensed as a psychologist, now or in the past. Considering the evidence of record, and taking judicial notice of the Pennsylvania state professional license database, we find no error in the ALJ's characterization of Dr. Stipe as a "social worker/counselor."

form.[7] Dr. Stipe noted that Lawrence had been treating with her for six years at that time. She reported current diagnoses of other specified persistent mood disorders and other specified anxiety disorders. Dr. Stipe opined that Lawrence had extreme limitations in four broad areas of work-related mental functioning: her ability to respond appropriately to supervision, criticism, and redirection; her ability to concentrate, persist, and complete tasks; her ability to adapt or manage herself; and her ability to understand, remember, or apply information. Dr. Stipe opined that Lawrence would have four or more "bad days" per month during which her symptoms are increased and she would not be able to complete an 8-hour work shift. Dr. Stipe also noted that Lawrence's symptoms "keep getting progressively worse." Dr. Stipe further opined that Lawrence was entirely unable to perform a great variety of work-related tasks on a regular, reliable, and sustained basis: maintain regular attendance and be punctual within customary, usual strict tolerances; work in coordination with or proximity to others without

---

[7] Attached to the form was a mental medical source statement that Dr. Stipe had previously completed on October 8, 2019. On the June 2020 evaluation form, however, Dr. Stipe indicated that limitations assessed in her October 2019 statement remained an accurate reflection of Lawrence's current limitations.

being unduly distracted; make simple work-elated decisions; complete a normal workday and workweek without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; accept instructions and respond appropriately to criticism from supervisors; get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; respond appropriately to changes in a routine work setting; deal with normal work stress; understand and remember detailed instructions; carry out detailed instructions; set realistic goals or make plans independently of others; deal with stress of semiskilled and skilled work; travel in unfamiliar places; and use public transportation. Dr. Stipe opined that Lawrence was capable of performing several other work-related tasks on an occasional basis only: understand and remember very short and simple instructions; maintain attention for two hour segments; and be aware of normal hazards and take appropriate precautions. (Tr. 763–68.)

In evaluating Dr. Stipe's medical opinion, the ALJ stated that:

> . . . [T]he opinions from the claimant's social worker/counselor [Dr.] Stipe are not persuasive. Regarding supportability, [Dr.] Stipe advised the claimant's symptoms have been getting progressively

worse and that mood swings and impulse control issues have not been managed well by medications.

However, therapy notes indicate the claimant is processing through various mental health issues, and the claimant has been able to be maintained with conservative care. Generally, progress notes do not indicate the claimant is getting progressively worse other than some concerns with suicidal ideation which were passive in May and June 2020, not present in early July 2020, and present in late July 2020. Regarding consistency, these opinions are inconsistent with the claimant's psychiatric progress notes, which indicate that medications have been helpful and with the state agency opinions. Additionally, these opinions are inconsistent with progress notes from [Dr.] Stipe herself, including records from early 2020 which indicate normal speech, normal thought process, and an appropriate [a]ffect.

Although the claimant had a depressed mood and anxious behavior as well as moderate issues with energy and motivation, these findings are not surprising given the claimant's mental health impairments. That being said, findings such as depressed mood, anxious behavior, and some issues with energy and motivation do not support that an individual is completely unable to work from a mental health standpoint. Although these records indicate the claimant was very upset about an email she got from her employer, the claimant was able to process this in therapy, and her therapist noted the claimant is definitely becoming more assertive in being able to stand up for herself, which is a major improvement. The claimant receives mental health therapy about every 2 weeks, which is consistent with conservative rather than more aggressive care. Many other

therapy records contain similar findings . . . .

(Tr. 19 (citations omitted).)

Here, the ALJ properly considered the medical evidence of record and the relevant factors of supportability and consistency. He expressly articulated the basis of his evaluation and his findings with respect to the persuasiveness of this opinion as well.

The plaintiff argues that the ALJ made only selective references to the record in his decision. She points out several medical findings not expressly discussed by the ALJ that she contends support a contrary finding with respect to the supportability and consistency of Dr. Stipe's opinion. But it is the exclusive province of the ALJ, not this court, to resolve conflicting evidence. "In the process of reviewing the record for substantial evidence, we may not 'weigh the evidence or substitute our own conclusions for that of the fact-finder.'" *Rutherford*, 399 F.3d at 552 (quoting *Williams*, 970 F.2d at 1182); *see also Stancavage v. Saul*, 469 F. Supp. 3d 311, 334 (M.D. Pa. 2020). Moreover, it is well settled that an ALJ is not required to discuss *every* detail of the record evidence cited in his opinion. *See Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 203–04 (3d Cir. 2008). "A written evaluation of every piece of evidence is not

required, as long as the ALJ articulates at some minimum level her analysis of a particular line of evidence. Moreover, the ALJ's mere failure to cite specific evidence does not establish that the ALJ failed to consider it." *Philips v. Barnhart*, 91 Fed. App'x 775, 780 n.7 (3d Cir. 2004) (citation omitted). While the evidence cited by the plaintiff on appeal might reasonably support a different conclusion with respect to the persuasiveness of Dr. Stipe's medical opinion, it does not compel it.

The plaintiff also argues that the ALJ erred in referring to the conservative nature of Lawrence's mental health treatment. But an ALJ may properly consider the fact that conservative treatment of a claimant's medical condition contradicts the degree of severity alleged by the claimant. *See Myers v. Comm'r of Soc. Sec.*, 684 Fed. App'x 186, 192 (3d Cir. 2017); *Garrett v. Comm'r of Soc. Sec.*, 274 Fed. App'x 159, 164 (3d Cir. 2008); *Dietrich v. Saul*, 501 F. Supp. 3d 283, 297 (M.D. Pa. 2020); *Antoniolo v. Colvin*, 208 F. Supp. 3d 587, 597 (D. Del. 2016).

Accordingly, we find the ALJ's evaluation of the medical opinions of the plaintiff's treating mental health counselor, Dr. Stipe, is supported by substantial evidence and was reached based upon a correct application of the relevant law.

## C. Opinion of Treating Psychiatrist

On July 9, 2020, Lawrence's treating psychiatrist, Gary B. Zimberg, M.D., provided her attorney with a letter stating his medical opinion with respect to her mental functional limitations. Dr. Zimberg conveyed his opinion that Lawrence had extreme limitations with respect to her ability to concentrate, persist, and complete tasks, marked limitations with respect to her ability to respond appropriately to supervision, criticism, and redirection, and moderate limitations with respect to her ability to adapt or manage herself and her ability to understand, remember, or apply information. He further opined that Lawrence's mental disorder was "serious and persistent," and that her symptoms were severe enough that she would be forced to miss four or more days of work each month. Dr. Zimberg's letter did not provide any support or explanation for these opinions. (Tr. 803.)

In evaluating Dr. Zimberg's opinion, the ALJ stated that:

> The opinions from the claimant's treating psychiatrist, Dr. Zimberg, . . . are not persuasive. [In his letter], Dr. Zimberg did not support why he reached the opinions that he did other than noting that the claimant's mental disorder was serious and persistent. This is insufficient support for his proposed limitations, some areas of which he noted were markedly to extremely limited. Additionally, the

limitations he noted are inconsistent with his actual treatment records, such as [his treatment notes from a March 26, 2019, encounter], which indicated the claimant rated her mood as an eight on a 0 to 10 scale, she displayed some humor, she found a recent increase in medication helpful in terms of anxiety and obsessional thinking, she was well groomed with a euthymic mood, and appropriate affect, and appropriate insight and judgment. Mental Status examination findings from December 2018 through February 2019 were similar[,] as were many of the mental status examination findings from March 2019 through March 2020.

(Tr. 19–20 (citations omitted).)

Here, the ALJ properly considered the medical evidence of record and the relevant factors of supportability and consistency. He expressly articulated the basis of his evaluation and his findings with respect to the persuasiveness of this opinion as well.

As with Dr. Stipe's opinion, here the plaintiff once again points to some of the medical evidence that supports a contrary finding. But it is the exclusive province of the ALJ, not this court, to resolve conflicting evidence. *See Rutherford*, 399 F.3d at 552; *Stancavage*, 469 F. Supp. 3d at 334. Moreover, to the extent the plaintiff has suggested that the ALJ has erred in failing to discuss the particular items of evidence she now cites, it is well settled that an ALJ is not required to discuss *every* detail

of the record evidence cited in his opinion. *See Johnson*, 529 F.3d at 203–04; *Philips*, 91 Fed. App'x at 780 n.7. While the evidence cited by the plaintiff on appeal might reasonably support a different conclusion with respect to the persuasiveness of Dr. Zimberg's medical opinion, it does not compel it.

Accordingly, we find the ALJ's evaluation of the opinion of the plaintiff's treating psychiatrist, Dr. Zimberg, is supported by substantial evidence and was reached based upon a correct application of the relevant law.

## III.   CONCLUSION

Based on the foregoing, we conclude that the Commissioner's finding that Lawrence was not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. Accordingly, the Commissioner's decision denying disability benefits is **AFFIRMED**.

An appropriate Order follows.

Dated: November 21, 2022          *s/Joseph F. Saporito, Jr.*
                                    JOSEPH F. SAPORITO, JR.
                                    United States Magistrate Judge